UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:02CV-287-R

BREMNER, INC.                                                                                    PLAINTIFF

v.

ARCHER DANIELS MIDLAND                                                          DEFENDANT

**OPINION AND ORDER**

This matter is before the court on composite motion of Defendant/Counter-Plaintiff Archer Daniels Midland ("ADM") in limine, objecting to damages and to exclude expert testimony (Dkt. # 62). Plaintiff/Counter-Defendant Bremner, Inc. ("Bremner") responded (Dkt. # 84), and ADM replied (Dkt. # 88). This matter is now ripe for decision.

The court shall first consider the motion to exclude expert testimony. The motions find their legal basis in the rule created in *Daubert* and *Kumho Tire*. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Those cases provide the legal analytical framework for the court to evaluate expert testimony. In essence, the court must perform a gatekeeping role to determine the reliability and fit of the expert testimony. Most often this turns on whether an expert is qualified to render the offered opinion and whether the opinion is based on valid reasoning and reliable methodology. In the end, the court must determine if the testimony is useful to the jury.

**1. Helen Cohen**

Ms. Cohen was asked to evaluate the damages numbers generated by Bremner to critique the methodology used by Bremner in calculating those damages.

*A. Qualifications*

ADM criticizes Ms. Cohen's qualifications, but its description of her qualifications is not entirely accurate.

She is a partner with the accounting form of Moore Stephens Potter, LLP.  Prior to that, she was with Ernst & Young (formerly Arthur Young).  Ms. Cohen has a B.A. degree from the University of Louisville and an MBA from Bellarmine College.  She is a CPA, accredited in business valuation and a Certified Valuation Analyst.  Additionally, she has her Series 7 and 66 licenses, investment advisory and insurance licenses, respectively.  She has taken several continuing education courses and is a member of various organizations including the National Association of Valuation Analysts, the American Institute of Certified Public Accountants, and the Kentucky Society of Certified Public Accountants.  Finally, she has chaired, given and/or participated in seminars involving negotiation of divorce settlements using 529 plans and advanced valuation of businesses and was a professional practices conference chair.

Ms. Cohen has little or no experience in the baking industry.  However, as a practicing CPA and with her other credentials, she had the requisite knowledge, skill, experience and education to give an opinion on the reasonableness of the methodology of Bremner's damages calculation.

*B. Reliability*

As the court understands, Ms. Cohen bases her opinion on data provided by Bremner. Bremner will be required to produce reasonable evidence of that data at trial.  She may give an opinion as to the methodology Bremner used to generate its damages.  It is the court's understanding that Ms. Cohen as an accountant will be opining that from an accounting perspective the methodology used by Bremner is acceptable.  She had no opinion as to causation, only that the methodology in calculating damages is acceptable.

ADM's objections are fertile field for cross-examination.  They go to weight and not the admissibility of Ms. Cohen's opinion.  The motion as to Helen Cohen is **DENIED**.

**2. Brian Mateja**

Mr. Mateja will offer opinions on the analysis of samples tested at Northland Laboratory.

*A. Qualification*

Mr. Mateja earned a Bachelor's degree in both biology and chemistry from DePaul University.  He has no advanced degrees in biology or chemistry.  He has a degree in business management and has held relevant technical positions with companies in the food service industry.  He has some experience in testing methods and with fat bloom.

ADM's motion is so broad that it is difficult for the court to evaluate.  It argues to strike opinions that Mr. Mateja is not making, or admits he will not make.  It then argues that he cannot give any opinion.  Bremner's response points out the obvious weaknesses of ADM's arguments but like ADM's motion does not focus on the opinions Mr. Mateja will give.

Mr. Mateja runs Northland Laboratory.  He has scientifically performed analytical work on cocoa.  He reviews the analytical work of other scientists and he often relies on their testing.  He is qualified by training and experience and it is reasonable for him to review results of tests prepared by technicians under his control and to draw reasonable conclusions from those results.

*B. Reliability*

Much of the testing analysis concerned was run on CF-1616 samples, and while Mr. Mateja did not do the testing himself, with the proper foundation he can rely on the results of others.  ADM argues that Mr. Mateja does not know enough about bloom to testify that the formula used by ADM for coating CF-1616 caused the bloom that is the subject of this case.

However, Bremner admits that Mr. Mateja will not testify as to whether any anomalies he noted as a result of the gas chromatograph and other tests run by Northland contributed to the bloom of ADM's coating CF-1616.

ADM's arguments that the tests are not reliable because the source was not the same are also problematic for ADM. There is an issue of common source. Bremner claims this comes from internal spoliation; in any event, the source was under ADM's control. The argument of source of the material goes to the weight of this testimony.

Bremner also concedes that Mr. Mateja will not offer an opinion that the CF-1616 coating supplied by ADM caused the bloom on the $600,000.00 worth of cookies produced by Bremner. Mr. Mateja may testify as to how studies of such acid profiles are made pursuant to the standards of the federal government. Likewise, Mr. Mateja's use of the Genesis program passes a reliability analysis. The use of the program was required because of the deterioration of source material. There is no evidence that the program was used inappropriately. Any issues with the program go to the weight of this testimony and not the admissibility of it. Mr. Mateja may testify to the opinions set forth in his expert designation of February 16, 2004 (Dkt. # 53) and those set forth in his deposition. The motion as to Mr. Mateja is **DENIED**.

### 3. Garry Cauffiel

Mr. Cauffiel is Director of Technical Services at the Bremner plant in Princeton, Kentucky. Bremner states: "[h]is testimony will relate solely and alone to the lack of compatibility between lauric and non-lauric compound coatings." (Response to Composite Motion in Limine and Related Pretrial Motions, Dkt. # 84, at 17.) Mr. Cauffiel has no training or experience to render an expert opinion on this issue. Bremner admits that prior to October, 2001, Mr. Cauffiel "was not intimately familiar with compound coatings." (*Id.* at 18.) Bremner

states that Mr. Schaff recommended putting a substitute coating on the line immediately, specifically a coating that, although based on a similar coating made of palm kernel oil, instead used a soy bean oil mixed with cotton seed oil.  Mr. Schaff also advised Bremner as to the clean-up procedures he believed would be necessary to facilitate a change-over from one coating to another.  The procedure recommended by Mr. Schaff seemed too lax to Mr. Cauffiel.  According to Bremner, Mr. Cauffiel then researched the subject and discovered that Mr. Schaff's opinions in this regard were not supported by at least some literature in the industry.  He then approved a different set of procedures.  Although, barring further foundation, Mr. Cauffiel will not be testifying as an expert witness, as a fact witness he is entitled to explain how he reached that decision.  If the materials upon which he based the decision are introduced, they will be introduced for this limited purpose only.  The Motion as to Mr. Cauffiel is **GRANTED**.

**4. Dr. Robert Dull**

     ADM argues that:

          1. Dr. Dull is not qualified to render his opinion;

          2. Dr. Dull relied on the tests of others and did not do "hands-on" testing, and therefore he has no personal basis for his opinions; and

          3. Dr. Dull's experience is in animal feed and he has insufficient training and experience to opine as to the cause of fat bloom in cookies.

The court has reviewed Dr. Dull's deposition and examined the qualifications discussed therein.  Upon proper foundation shown, the court finds Dr. Dull is qualified by training and experience to give the opinions rendered in this case.  The court finds the opinions expressed in Dr. Dull's deposition to be scientifically and technically reliable and relevant to the issues of the case.  The motion as to Dr. Dull is **DENIED**.

**5. Bremner's Elements of Damages**

ADM also moves to exclude Bremner's damages for the tempering units, lost profits and inventory, harm to goodwill and business reputation as well as those damages associated with the use of CF-1802. The court is uncertain as to whether Bremner's proof will be sufficient. At the same time, the court recognizes that it may be. This issue is best addressed at the close of trial. The motion is therefore **DENIED** with leave to refile.

**IT IS SO ORDERED.**